**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CAROL J. DELGADO, | ) | Case No. 20-08603 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |

<u>**NOTICE OF MOTION**</u>

TO: See attached list

　　　PLEASE TAKE NOTICE that on **Thursday, May 5, 2022, at 9:00 a.m.**, I will appear before the Honorable Judge Deborah L. Thorne, or any judge sitting in that judge's place, and present the **Trustee's Motion To Approve Settlement and Investigation Support Agreement with CIBC Bank USA** (the "**Motion**"), a copy of which is attached.

　　　**This Motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the Motion, you must do the following:

　　　**To appear by video**, use this link: https://www.zoomgov.com. Then enter the meeting ID.

　　　**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

　　　**Meeting ID and password.** The meeting ID for this hearing is 160 9362 1728. No password is required. The meeting ID and further information can also be found on Judge Thorne's web page on the Court's website.

　　　**If you object to this Motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the Motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the Motion in advance without a hearing.

| | |
|---|---|
| Dated: April 7, 2022 | Respectfully submitted, |
| Ronald R. Peterson (2188473) | GINA B. KROL, not individually but as |
| JENNER & BLOCK LLP | chapter 7 trustee for the estate of Carol J. |
| 353 N. Clark Street | Delgado |
| Chicago, Illinois  60654-3456 | |
| PH:    312-923-2981 | By: */s/ Ronald R. Peterson* |
| FAX:  312-840-7381 | Special Counsel to the Trustee |

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald R. Peterson, certify that on April 7, 2022, I caused a copy of the foregoing

**Trustee's Motion to Approve Settlement and Investigation Support Agreement with CIBC**

**Bank USA** to be served upon the parties listed on the attached Service List that are registered with

the Court's CM/ECF system, by electronic notification of the filing and to all others by U.S. mail,

properly addressed and postage prepaid.


   */s/ Ronald R. Peterson*

## SERVICE LIST

In re Delgado
20-08603

**VIA ECF Notification:**

- **Matthew C Abad**      bknotice@klueverlawgroup.com
- **William D Cherny**    bill@chernylaw.com, r42907@notify.bestcase.com
- **Joseph E Cohen**      jcohen@cohenandkrol.com, cohenattorney@gmail.com;
  gkrol@cohenandkrol.com; jneiman@cohenandkrol.com;
  acartwright@cohenandkrol.com
- **Travis J Eliason**    travis.eliason@quarles.com
- **Sheryl A Fyock**      sfyock@llflegal.com
- **Jeffrey L. Gansberg** jeffrey.l.gansberg@usdoj.gov
- **Gina B Krol**         gkrol@cohenandkrol.com, gkrol@ecf.axosfs.com;
  gkrol@cohenandkrol.com; acartwright@cohenandkrol.com;
  jneiman@cohenandkrol.com
- **Gina B Krol**         gkrol@cohenandkrol.com, gkrol@cohenandkrol.com;
  acartwright@cohenandkrol.com; jneiman@cohenandkrol.com
- **Patrick S Layng**     USTPRegion11.ES.ECF@usdoj.gov
- **Jeffrey M Monberg**   jeffrey.monberg@quarles.com, jenny.fik@quarles.com
- **Paul T Musser**       paul.musser@akerman.com
- **Thomas B Fullerton**  thomas.fullerton@akerman.com
- 
- **Todd J Ruchman**      amps@manleydeas.com
- **Timothy R Yueill**    timothyy@nevellaw.com

**VIA U.S. Mail:**

Patrick S. Layng                          Office of the US Trustee
Office of the U.S. Trustee, Region 11      51 S.W. 1st Ave. Suite 1204
219 S. Dearborn St., Room 873             Miami, FL 33130-1614
Chicago, IL 60604-2027

Carol J Delgado                            Carol J. Delgado
209 N. Ft. Lauderdale Beach Blvd.          427 W. Benton Ave
Fort Lauderdale, FL 33304-4365             Naperville, IL 60540

Jay Delgado                                Janaye A Delgado
18748 Tammy Drive                          427 W. Benton Ave
Mokena, IL 60448-9585                      Naperville, IL 60540-4405

Janaye A. Delgado
13043 W Regan Road
Mokena, IL 60448-8788

Nick J. Delgado
427 W Benton Ave
Naperville, IL 60540-4405

Village Bank & Trust Company
c/o Sheryl A. Fyock
Latimer LeVay Fyock LLC
55 West Monroe Street, Ste 1100
Chicago, IL 60603-5128

Associated Bank National Association
c/o Quarles & Brady LLP
300 N. LaSalle St., Ste 4000
Chicago, IL 60654-3422

Brent D. Houck
209 N. Ft. Lauderdale Beach Blvd.
Ft. Lauderdale, FL 33304-4365

CIBC Bank, USA
120 South LaSalle Street
Chicago, IL 60603-3403

Capital One Bank (USA). N.A.
By American InfoSource as agent
PO Box 71083
Charlotte, NC 28272-1083

Capital One Sparks
PO Box 30281
Salt Lake City, UT 84130-0281

Citibank Visa
PO Box 6241
Sioux Falls, SD 57117-6241

Citicards CBNA
PO Box 6241
Sioux Falls, SD 57117-6241

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Nick J. Delgado
3848 N. Janssen Ave
Chicago, IL 60613-2822

Associated Bank
200 N. Adams Street
Green Bay, WI 54301-5174

Bank of America
PO Box 982238
El Paso, TX 79998-2238

Capital One Bank (USA), N.A.
By American InfoSource as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Capital One Bank USA
PO Box 30281
Salt Lake City, UT 84130-0281

Citibank, N.A.
5800 S Corporate Pl
Sioux Falls, SD 57108-5027

City of Naperville
Finance Department
PO Box 3020
Naperville, IL 60566-7020

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Discover Personal Loans
PO Box 30954
Salt Lake City, UT 84130-0954

HSBC Bank, USA
PO Box 4657
Carol Stream, IL 60197-4657

Nationstar Mortgage LLC
d/b/a Mr. Cooper
Attn: Bankruptcy Dept
PO Box 619096
Dallas, TX 75261-9096

Discover Financial Services
502 E. Market St.
Greenwood, DE 19950-9700

HSBC Bank USA, N.A.
Attn: Business Services
2929 Walden Ave C17
Depew, NY 14043-2690

JB Architecture Group Inc.
1320 N Rt 59, Ste 124
Naperville, IL 60563-4297

Midwest Windows & Supply/Trimworks
800 Hicks Drive
Elburn, IL 60119-9060

National Mortgage LLC
d/b/a Mr. Cooper
8950 Cypress Water Blvd.
Dallas, TX 75019-4620

NewRez LLC
d/b/a Shellpoint Mortgage Servicing
Bankruptcy Dept.
POB 10826
Greenville, SC 29603-0826

On-Deck Capital Inc.
101 W. Colfax Ave. 10th Floor
Denver, CO 80202-5167

Roland Masonry & Construction
31W576 North Ave
West Chicago, IL 60185-1021

SOFI Lending Corp.
Attn: Lacee Hunsaker
2750 East Cottonwood Pkwy, Ste 300
Salt Lake City, UT 84121-7285

World Global Capital LLC
d/b/a YES FUNDING
30 Broad Street, 14th Fl, Ste. 14108
New York, NY 10004-2304

Nationstar Mortgage LLC
d/b/a Mr. Cooper
c/o Manley Deas Kochalski LLC
PO Box 165028
Columbus, OH 43216-5028

On Deck Capital, Inc.
c/o Christine Levi
1400 Broadway
New York, NY 10018-5300

SOFI Lending Corp.
375 Healdsburg Ave, Ste. 2
Healdsburg, CA 95448-4150

Village Bank and Trust
311 South Arlington Heights Rd
Arlington Heights, IL 60005-1957

ZHY Investments, LLC
1896 Sheridan Road #280
Highland Park, IL 60035-2655

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CAROL J. DELGADO, | ) | Case No. 20-08603 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| | ) | |
| | ) | Hearing: May 5, 2022 at 9:00 a.m. |

**TRUSTEE'S MOTION TO APPROVE**
**SETTLEMENT AND INVESTIGATION SUPPORT AGREEMENT**
**WITH CIBC BANK USA**

Gina B. Krol, not individually but solely as chapter 7 trustee (the "**Trustee**") for Carol J. Delgado (the "**Debtor**"), respectfully moves (the "**Motion**") for entry of an Order, pursuant to sections 105(a), 363, 364(c), and 502 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Trustee to enter into a Settlement and Investigation Support Agreement with CIBC Bank USA (f/k/a The Private Bank and Trust Company) ("**CIBC**"), substantially in the form attached hereto as Exhibit A (the "**CIBC Agreement**"), and states:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157. To the extent this Court does not have constitutional authority to enter a final order on this Motion absent consent, the Trustee hereby consents to the entry of a final order. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 363, 364(c), and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

3.        On January 27, 2020, the Debtor filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida. On March 6, 2020, the Debtor's chapter 11 case was transferred to the United States Bankruptcy Court for the Northern District of Illinois. On June 11, 2020, the Debtor's chapter 11 case was converted to chapter 7, and Gina B. Krol was appointed as Trustee.

4.        Prior to the Petition Date (as defined below), CIBC made certain loans and other financial accommodations to corporate entities owned and controlled by Debtor.  On or about October 29, 2013, CIBC, on the one hand, and FMSI of Delaware, Inc. ("**FMSI Delaware**"), FMSI Consumer Credit Corporation ("**FMSI Consumer**"), Three Marketiers, LLC ("**Three Marketiers**"), and FMSI-Financial Resources, LLC ("**FMSI Financial**", and collectively with FMSI Delaware, FMSI Consumer, and Three Marketiers, "**FMSI**"), on the other hand, entered into that certain Business Loan and Security Agreement (as amended, the "**FMSI Loan Agreement**"), pursuant to which CIBC agreed to lend FMSI up to $10,000,000.  On or about December 19, 2014, CIBC, on the one hand, and Renewable Asset Management Company, LLC ("**RAMCO**", and together with FMSI, the "**Delgado Borrowers**"), on the other hand, entered into that certain Business Loan Security Agreement (as amended, the "**RAMCO Loan Agreement**"; the RAMCO Loan Agreement, together with the FMSI Loan Agreement, the "**Loan Agreements**"), pursuant to which CIBC agreed to lend  RAMCO up to $10,000,000.  The loans made pursuant to the Loan Agreements were secured by senior perfected liens on substantially all of the Delgado Borrowers' assets.

2

5.      Debtor executed those certain Limited Guaranties (the "**Guaranties**") pursuant to which Debtor guaranteed the Delgado Borrowers' obligations under the Loan Agreements up to $2,000,000 plus certain expenses incurred by CIBC.

6.      On or about September 6, 2016, CIBC filed an action (the "**Breach of Contract Action**")[1] against Delgado and the Delgado Borrowers in the Circuit Court of Cook County, Illinois (the "**Illinois Court**"), asserting, without limitation, claims for breach of the Loan Agreements and Guaranties.

7.      On or about September 22, 2016, RAMCO Holdings, LLC ("**RAMCO Holdings**"), another entity wholly owned, controlled, and managed by Debtor,[2] filed an Emergency Petition to Intervene in the Breach of Contract Action, asserting that it had purchased certain Delgado Borrowers' assets, including certain RAMCO accounts receivable related to and certain solar panel leases and loans that were CIBC's collateral under the Loan Agreements.  CIBC demanded the turnover of these transferred assets and Debtor and Holdings refused.

8.      On or about October 11, 2016, CIBC commenced a civil fraud lawsuit (the "**Civil Fraud Case**")[3] against, without limitation, the Debtor and Brent Houck ("**Houck**"). The Civil Fraud Case remains pending.

---

[1] *The PrivateBank and Trust Company v. Renewable Asset Mgmt. Co. et al.*, Case No. 2016-CH-11769 (Ill. Cir. Ct.).

[2] Debtor has represented that she wholly owns RAMCO Holdings, which in turn wholly owns RAMCO Capital Group, LLC ("**RAMCO Capital**"), which in turn wholly owns Project Solar, LLC ("**Project Solar**"), Rooftop O&M, LLC ("**Rooftop**") and RAMCO MM, LLC ("**RAMCO MM**", collectively with the Delgado Borrowers, RAMCO Holdings, RAMCO Capital, Project Solar and Rooftop, the "**Delgado Entities**").

[3] *The PrivateBank and Trust Company v. Carol Delgado et al.*, Case 2016-CH-13392 (Cir. Ct. of Cook County, Ill.).

9.      On or about September 27, 2017, CIBC obtained a judgment in the Breach of Contract Action in favor of CIBC and against (i) Debtor in the amount of $2,117,778.22, (ii) FMSI in the aggregate amount of $8,980,806.13, and (iii) RAMCO in the amount of $7,848,712.20 the total amount of $15,386,923.96 (the "**Breach of Contract Judgment**"). Thereafter, CIBC obtained and perfected judgment liens and citation liens on numerous items of real and personal property owned by the Debtor, the Delgado Borrowers, and various related entities.

10.      On or about February 17, 2018, the Debtor and Houck were criminally indicted for bank fraud under 18 U.S.C. § 1344 for fraudulently inducing CIBC into making millions of dollars' worth of loans to entities owned by the Debtor and Houck (the "**Criminal Case**").[4] The Criminal Case remains pending.

11.      On or about May 21, 2018, CIBC filed an action (the "**RAMCO Holdings Action**")[5] against, without limitation, RAMCO Holdings in the Circuit Court of Cook County, Illinois asserting, without limitation, claims for fraudulent transfer and successor liability.  Certain claims against Columbia Pipe & Supply Company in the RAMCO Holdings Action were settled pursuant to that certain settlement agreement (the "**Columbia Pipe Settlement Agreement**").  The claims against RAMCO Holdings remain pending.

12.      On or about July 24, 2018, CIBC filed its Verified Complaint for Foreclosure of Judgment Lien (the "**Florida Foreclosure Action**", collectively with the RAMCO Holdings Action, the "**Enforcement Actions**")[6] against, without limitation, Debtor and Houck regarding the

---

[4] *United States of America v. Delgado*, Case No. 18-122 (N.D. Ill.).

[5] *The PrivateBank and Trust Company v. RAMCO Holdings, LLC*, Case No. 2018-CH-6505 (Cir. Ct. of Cook County, Ill.).

[6] *CIBC Bank USA v. Carol Delgado and Brent Houck*, Case No. CACE 18-017754 (Cir. Ct. of Broward County, Fla.).

4

property commonly known as 209 North Fort Lauderdale Beach Boulevard, Unit 2A, Fort
Lauderdale, Florida 33304 (the "**Fort Lauderdale Condo**").  The Florida Foreclosure Action
remains pending.

13.     On or about June 1, 2020, CIBC filed Claim No. 10 (the "**CIBC Prepetition
Claim**") in the Debtor's bankruptcy case asserting a partially secured claim in the amount of
$15,386,923.96. The CIBC Prepetition Claim is based principally on the Breach of Contract
Judgment, along with the acts of fraudulent inducement underlying the Criminal Case and Civil
Fraud Case.

### TRUSTEE'S PROPOSED AGREEMENT WITH CIBC

14.     As the Court is aware, the Trustee has been attempting to investigate causes of
action and other potential sources of recovery for the estate and its creditors. In addition to the
Debtor's ongoing failure to cooperate with the Trustee's investigation, there have been several
gating issues that, until now, have made it difficult for the Trustee to justify ramping up the
investigation—namely, a lack of existing funds, the fact that the most likely sources of recovery
are already subject to CIBC's prepetition liens, and the size of CIBC's claims relative to other
creditors in this case.

15.     To address these issues, the Trustee and CIBC have negotiated the CIBC
Agreement, the principal terms of which are summarized as follows:

5

| SUMMARY OF CIBC AGREEMENT[7] | |
|---|---|
| General Structure & Investigation Targets | In exchange for a super-priority administrative expense claim and a release from the Trustee, CIBC will voluntarily subordinate a portion of its prepetition claim and assign to the Trustee certain of its rights against the following parties and their property (collectively, the "**Investigation Targets**"):<br><br>(1) the Debtor;<br>(2) Brent Houck;<br>(3) Jay Delgado;<br>(4) any family member of any of the foregoing persons;<br>(5) any corporate or trust entity directly or indirectly owned or controlled by any of the foregoing persons; and<br>(6) any individual or entity the Parties subsequently agree to include as an Investigation Target. |
| **CIBC Assignment to the Estate** | |
| Assigned Assets | CIBC will assign to the Trustee the following:<br><br>(1) Except to the extent constituting an Excluded Claim, any and all claims, choses in action, causes of action, suits, sums of money, damages, demands, judgments, and other *in personam* rights of CIBC against any Investigation Target, whether known or unknown, now owned or hereafter acquired by CIBC, whether arising under Federal, state, or foreign law, in equity, or otherwise against any Investigation Target.<br><br>(2) Any and all *in rem* interests of CIBC in the following real property of certain Investigation Targets under the security agreements, judgments, and citations described in CIBC's proof of claim (Claim No. 10): (i) 119 S. Ellsworth Avenue, Naperville, IL 60540 (the "**Ellsworth Property**") (ii) 426 W. Franklin Avenue, Naperville, IL 60540, (iii) 427 W. Benton Avenue, Naperville, IL 60540, (iv) 13043 W. Regan Road, Mokena, IL 60448, (v) 18748 Tammy Drive, Mokena, IL 60448, and (vi) the Fort Lauderdale Condo. |

[7] This summary of the CIBC Agreement is qualified in its entirety by reference to the applicable provisions of the CIBC Agreement. To the extent there are any inconsistencies between this summary and the provisions of the CIBC Agreement, the provisions of the CIBC Agreement shall control. Any capitalized terms used but not otherwise defined in this summary shall have the respective meanings ascribed to such terms in the CIBC Agreement.

| Excluded Claims | CIBC's assignment to the Trustee will not include any of the following (collectively the "**Excluded Claims**"):<br><br>(1) CIBC's rights under the Breach of Contract Judgment except to the extent it includes or serves as the basis for rights to any Assigned Collateral;<br><br>(2) CIBC's rights against the Debtor and Houck in the Civil Fraud Case;<br><br>(3) CIBC's rights under the Columbia Pipe Settlement; and<br><br>(4) any right of CIBC to participate in, or receive restitution or forfeiture or other any other form of monetary relief, judgment, order, assets or liens in connection with or related to the Criminal Case, including, without limitation, with regards to any order, judgment, sentencing, seizure, liquidation, collections, post-judgment or forfeiture proceeding, or any other criminal proceeding involving an Investigation Target related to the allegations in the Criminal Case. |
| --- | --- |
| **Allowance & Treatment of CIBC's Claims** | |
| Allowed Administrative Claim | CIBC shall receive an allowed super-priority administrative expense claim (the "**Allowed Administrative Claim**") in an amount equal to the sum of:<br><br>(a) 50% of any net proceeds generated, collected or resulting from the sale of the Estate's 50% interest in the Ellsworth Property; *plus*<br><br>(b) 50% of any proceeds generated, collected or resulting from or related to the Enforcement Actions or any related judgment, including, without limitation, with regards to any order, judgment, seizure, liquidation, collection, or post-judgment proceeding; *plus*<br><br>(c) 15% of any and all of the Trustee's other gross recoveries from the Investigation Targets.<br><br>The Allowed Administrative Claim shall be subordinate only to the allowed compensation and expenses of the Trustee and her retained professionals. Otherwise, the Allowed Administrative Claim shall be entitled to priority over all administrative expenses, priority unsecured claims, and general unsecured claims against the Estate. |

| Allowed Prepetition Claim | The CIBC Prepetition Claim shall be allowed in an amount of at least $14,647,644.60 as of June 1, 2020 *less:* (1) the amount of the Allowed Administrative Claim; and (2) the value of any assets CIBC recovers during the Bankruptcy Case on account of the Excluded Claims (the "**Allowed Prepetition Claim**"). <br><br> Up to $1,213,000 of the Allowed Prepetition Claim will be entitled to payment *pari passu* with other allowed general unsecured claims against the Estate. <br><br> The remainder of the Allowed Prepetition Claim will be voluntarily subordinated until all other allowed general unsecured claims are paid in full. |
|---|---|
| **Release** | |
| Trustee's Release | The Trustee, on behalf of the Trustee Releasing Parties (as defined in the CIBC Agreement) will unconditionally, irrevocably, and expressly release, acquit, exonerate, and forever discharge each of the CIBC Released Parties (as defined in the CIBC Agreement) from any and all manner of action (including, without limitation, the items detailed in paragraph 6 of the CIBC Agreement). |
| **Miscellaneous** | |
| Trustee's Business Judgment | The Trustee shall have sole discretion to, in an exercise of her business judgment, decide whether to prosecute or settle claims held by the estate, irrespective of whether such claims originated with CIBC. |
| Discharge Objection Rights | CIBC will retain its right to have all or part of its claims against the Debtor to be determined to be non-dischargeable |
| Good Faith Cooperation | CIBC will cooperate with the Trustee to effectuate any ancillary agreements or instruments, or to take any ministerial actions as may be necessary, to effectuate the Assignments. <br><br> In the event the Trustee or CIBC identify any other asset that is or may be subject to a lien or security interest of CIBC, the Trustee and CIBC shall confer in good faith to regarding a mutually beneficial strategy to recover such asset. <br><br> CIBC will cooperate with the Trustee's investigation, including by providing any documents or information requested by the Trustee. |

16.    As discussed below, the CIBC Agreement will enable the Trustee to continue investigating meritorious claims that would otherwise not be pragmatic to pursue. The CIBC Agreement represents a win-win arrangement for the estate, CIBC, and all other stakeholders, and should therefore be approved.

### RELIEF REQUESTED

17.    By this Motion, the Trustee seeks: (1) approval of and authority to enter into the CIBC Agreement; (2) approval of the stipulations and releases contained in the CIBC Agreement under Bankruptcy Rule 9019(a); and (3) authority under section 364(c)(1) to grant CIBC a super-priority administrative expense claim in accordance with the terms of the CIBC Agreement.

### A. The Stipulations and Releases Contained in the CIBC Agreement Should be Approved Under Bankruptcy Rule 9019.

18.    Bankruptcy Rule 9019(a) provides, in part, that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises are a normal part of the bankruptcy process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). As a matter of policy, compromises and settlements are favored in order to minimize litigation and expedite administration of the estate. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

19.    The benchmark for determining the propriety of a bankruptcy settlement under Bankruptcy Rule 9019(a) is whether the settlement is fair and equitable and in the best interests of the estate. *Depoister v. Mary M. Holloway Found*., 36 F.3d 582, 586 (7th Cir. 1994); *In re Energy Coop., Inc*., 886 F.2d 921, 927 (7th Cir. 1989); *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 161-62 (7th Cir. 1987) (explaining same and instructing that any distinction between the "best interests of the estate" and the "fair and equitable" standards is of little consequence).

9

20.    In determining whether a proposed settlement is fair and equitable, neither an evidentiary hearing nor a rigid mathematical analysis is required. *Depoister*, 36 F.3d at 586, 588; *In re Energy Coop.*, 886 F.2d at 928-29. Rather, the court must determine whether the proposed compromise falls within the reasonable range of litigation possibilities. *In re Energy Coop.*, 886 F.2d at 929; *In re Am. Reserve Corp.*, 841 F.2d at 161.

21.    After reviewing CIBC's proofs of claims and supporting materials and investigating whether the estate holds any potential counterclaims, the Trustee has not identified any colorable basis to pursue litigation against CIBC. However, for purposes of obtaining finality, CIBC has requested the releases contained in the CIBC Agreement as a condition to entering into the agreement. The Trustee believes that the value of the consideration the estate will receive under the CIBC Agreement—including, among other things, an assignment of certain of CIBC's collateral and claims against third parties and CIBC's voluntarily partial subordination of its prepetition claims—greatly exceeds the value of any potential relief the Trustee might otherwise be able to obtain against CIBC through litigation. Accordingly, the Trustee respectfully submits that granting CIBC the stipulations and releases set forth in the CIBC Agreement is in the best interest of the Debtor's estate and creditors. The Trustee therefore requests that the Court approve the stipulations and releases contained in the CIBC Agreement under Bankruptcy Rule 9019.

**B.  Cause Exists to Grant CIBC a Super-Priority Administrative Expense Claim.**

22.    Section 364(c)(1) of the Bankruptcy Code provides, "If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt— (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title[.]" 11 U.S.C. § 364(c)(1). "[U]nder § 364(c)(1) . . . the court may grant a creditor

a superpriority [claim] in order to induce such creditor to [fund the estate's postpetition expenses]."

*In re Energy Co-op, Inc.*, 55 B.R. 957, 963 n.20 (Bankr. N.D. Ill. 1985).

23.     As discussed above, while the Trustee believes the Estate may have meritorious and potentially valuable claims against the Investigation Targets and their properties, the Estate currently lacks sufficient funds to pursue those claims. Since CIBC and other creditors will likely not receive any distribution from the Estate under the status quo, CIBC has offered to assign to the Trustee a portion of its collateral so that the Trustee can use the proceeds to fund her investigation and any resulting litigation. At the same time, due to the inherent uncertainty associated with bringing those claims and collect any resulting judgment, the Trustee is not able to obtain unsecured credit from another source. Moreover, since the amount of the proposed super-priority administrative expense claim is simply a specified percentage of the recoveries made possible by the CIBC Agreement, there is no risk that other creditors will receive less than they currently stand to receive under the status quo. Just the opposite, since CIBC is agreeing to voluntarily subordinate the vast majority of its prepetition claim until all other allowed general unsecured claims have been paid in full, the CIBC Agreement will actually increase the likelihood of other creditors receiving a distribution in this case. For these reasons, cause exists to grant CIBC a super-priority administrative expense in accordance with the terms of the CIBC Agreement.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an Order, substantially in the form attached hereto: (a) approving and authorizing the Trustee to enter into CIBC Agreement; (b) approving the stipulations and releases contained in the CIBC Agreement under Bankruptcy Rule 9019; (c) allowing CIBC a super-priority administrative expense claim in accordance with the CIBC Agreement; and (d) granting such other relief as may be just.

11

Dated: April 7, 2022

Respectfully submitted,

GINA B. KROL, not individually but as chapter 7 trustee for the estate of Carol J. Delgado

By: /s/ *Ronald R. Peterson*

Ronald R. Peterson (2188473)
William A. Williams (6321738)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois  60654-3456
PH:     312-923-2981
FAX:  312-840-7381

*Special Counsel to the Trustee*

**EXHIBIT A**
**(Settlement & Investigation Support Agreement)**

## SETTLEMENT AND INVESTIGATION SUPPORT AGREEMENT

This Settlement and Investigation Support Agreement ("**Agreement**") is made between CIBC Bank USA (f/k/a The Private Bank and Trust Company) ("**CIBC**"), on the one hand, and Gina B. Krol, not individually but solely as chapter 7 trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of Carol J. Delgado (the "**Debtor**"), on the other hand. CIBC and the Trustee are sometimes hereafter referred to as the "**Parties**."

## RECITALS

A.      Prior to the Petition Date (as defined below), CIBC made certain loans and other financial accommodations to corporate entities owned and controlled by Debtor.  On or about October 29, 2013, CIBC, on the one hand, and FMSI of Delaware, Inc. ("**FMSI Delaware**"), FMSI Consumer Credit Corporation ("**FMSI Consumer**"), Three Marketiers, LLC ("**Three Marketiers**"), and FMSI-Financial Resources, LLC ("**FMSI Financial**", and collectively with FMSI Delaware, FMSI Consumer, and Three Marketiers, "**FMSI**"), on the other hand, entered into that certain Business Loan and Security Agreement (as amended, the "**FMSI Loan Agreement**"), pursuant to which CIBC agreed to lend FMSI up to $10,000,000.  On or about December 19, 2014, CIBC, on the one hand, and Renewable Asset Management Company, LLC ("**RAMCO**", and together with FMSI, the "**Delgado Borrowers**"), on the other hand, entered into that certain Business Loan Security Agreement (as amended, the "**RAMCO Loan Agreement**"; the RAMCO Loan Agreement, together with the FMSI Loan Agreement, the "**Loan Agreements**"), pursuant to which CIBC agreed to lend  RAMCO up to $10,000,000.  The loans made pursuant to the Loan Agreements were secured by senior perfected liens on substantially all of the Delgado Borrowers' assets.

B.      Debtor executed those certain Limited Guaranties (the "**Guaranties**") pursuant to which Debtor guaranteed the Delgado Borrowers' obligations under the Loan Agreements up to $2,000,000 plus certain expenses incurred by CIBC.

C.      On or about September 6, 2016, CIBC filed an action (the "**Breach of Contract Action**")[8] against Delgado and the Delgado Borrowers in the Circuit Court of Cook County, Illinois (the "**Illinois Court**"), asserting, without limitation, claims for breach of the Loan Agreements and Guaranties.  Timothy A. Turek (the "**Receiver**") was appointed as receiver for the Delgado Borrowers in the Breach of Contract Action (the "**Receivership**").

D.      On or about September 22, 2016, RAMCO Holdings, LLC ("**RAMCO Holdings**"), another entity wholly owned, controlled, and managed by Debtor,[9] filed an Emergency Petition to

---

[8] *The PrivateBank and Trust Company v. Renewable Asset Mgmt. Co. et al.*, Case No. 2016-CH-11769 (Ill. Cir. Ct.).

[9] Debtor has represented that she wholly owns RAMCO Holdings, which in turn wholly owns RAMCO Capital Group, LLC ("**RAMCO Capital**"), which in turn wholly owns Project Solar, LLC ("**Project Solar**"), Rooftop O&M, LLC ("**Rooftop**") and RAMCO MM, LLC ("**RAMCO MM**", collectively with the Delgado Borrowers, RAMCO Holdings, RAMCO Capital, Project Solar and Rooftop, the "**Delgado Entities**").

Intervene in the Breach of Contract Action, asserting that it had purchased certain Delgado Borrowers' assets, including certain RAMCO accounts receivable related to and certain solar panel leases and loans that were CIBC's collateral under the Loan Agreements.  CIBC demanded the turnover of these transferred assets and Debtor and Holdings refused.

E.      On or about October 11, 2016, CIBC commenced a civil fraud lawsuit (the "**Civil Fraud Case**")[10] against, without limitation, the Debtor and Brent Houck ("**Houck**"). The Civil Fraud Case remains pending.

F.      On or about November 29, 2016, the Receiver filed voluntary chapter 11 bankruptcy petitions on behalf of RAMCO (Case No. 16-37669), FMSI Delaware (Case No. 16-37671), FMSI Consumer (Case No. 16-37672), FMSI Financial (Case No. 16-37673) and Three Marketiers (Case No. 16-37674) in the United States Bankruptcy Court for the Northern District of Illinois (collectively, the "**Delgado Borrowers Bankruptcy Cases**").  On December 7, 2016, the Delgado Borrowers Bankruptcy Cases were voluntarily dismissed pursuant to an agreed order.

G.      On or about September 27, 2017, CIBC obtained a judgment in the Breach of Contract Action in favor of CIBC and against (i) Debtor in the amount of $2,117,778.22, (ii) FMSI in the aggregate amount of $8,980,806.13, and (iii) RAMCO in the amount of $7,848,712.20 the total amount of $15,386,923.96 (the "**Breach of Contract Judgment**"). Thereafter, CIBC obtained and perfected judgment liens and citation liens on numerous items of real and personal property owned by the Debtor, the Delgado Borrowers, and various related entities.

H.      On or about February 17, 2018, the Debtor and Houck were criminally indicted for bank fraud under 18 U.S.C. § 1344 for fraudulently inducing CIBC into making millions of dollars' worth of loans to entities owned by the Debtor and Houck (the "**Criminal Case**").[11] The Criminal Case remains pending.

I.      On or about May 21, 2018, CIBC filed an action (the "**RAMCO Holdings Action**")[12] against, without limitation, RAMCO Holdings in the Circuit Court of Cook County, Illinois asserting, without limitation, claims for fraudulent transfer and successor liability.  Certain claims against Columbia Pipe & Supply Company in the RAMCO Holdings Action were settled pursuant to that certain settlement agreement (the "**Columbia Pipe Settlement Agreement**").  The claims against RAMCO Holdings remain pending.

J.      On or about May 31, 2018, the Illinois Court entered an order in the Contract Action whereby Debtor, RAMCO and Holdings admitted that certain solar panel leases and loans (the "**First RAMCO Portfolio**") in Holdings' possession and control were CIBC's collateral under the Loan Agreements and turned the First RAMCO Portfolio over to CIBC.

K.      On or about July 24, 2018, CIBC filed its Verified Complaint for Foreclosure of Judgment Lien (the "**Florida Foreclosure Action**", collectively with the RAMCO Holdings

---

[10] *The PrivateBank and Trust Company v. Carol Delgado et al.*, Case 2016-CH-13392 (Cir. Ct. of Cook County, Ill.).
[11] *United States of America v. Delgado*, Case No. 18-122 (N.D. Ill.).
[12] *The PrivateBank and Trust Company v. RAMCO Holdings, LLC*, Case No. 2018-CH-6505 (Cir. Ct. of Cook County, Ill.).

Action, the "**Enforcement Actions**")[13] against, without limitation, Debtor and Houck regarding the property commonly known as 209 North Fort Lauderdale Beach Boulevard, Unit 2A, Fort Lauderdale, Florida 33304 (the "**Fort Lauderdale Condo**"). The Florida Foreclosure Action remains pending.

L.      On or about December 5, 2018, the Illinois Court entered an order approving CIBC's sale of the First RAMCO Portfolio in an amount of at least $4,000,000. On December 7, 2018, CIBC conducted an auction for the First RAMCO Portfolio, asserted a winning credit bid of $4,200,000, and applied that amount against the portion of the Breach of Contract Judgment owed by RAMCO (the "**First RAMCO Sale**").

M.      In the summer of 2018, CIBC discovered a second RAMCO solar panel loan and lease portfolio that had been transferred to Holdings (the "**Second RAMCO Portfolio**"; collectively with the First RAMCO Portfolio, the "**RAMCO Portfolios**"). CIBC demanded turnover of the Second RAMCO Portfolio, but Debtor and Holdings refused. On April 4 and 5, 2019, the Illinois Court presided over a trial regarding the ownership of the Second RAMCO Portfolio. On May 29, 2019, the Illinois Court entered its Findings of Fact and Conclusions of Law, holding that the Second RAMCO Portfolio constituted an asset of RAMCO and were CIBC's collateral and ordering Debtor, the Delgado Borrowers and Holdings to turn it over to CIBC.

N.      On or about March 18, 2019, the Debtor, RAMCO Holdings, Financial Management Services, Inc. and RAMCO filed Case No. 2019 CH 03550 (the "**2019 Lawsuit**") in the Circuit Court of Cook County, Illinois asserting certain claims against the Receiver based on the Delgado Borrowers Bankruptcy Cases. The Trustee and Receiver settled any and all such claims pursuant to that certain Settlement Agreement and Mutual Release that was approved by the Bankruptcy Court. The Trustee subsequently dismissed the 2019 Lawsuit with prejudice.

O.      On or about January 27, 2020, the Debtor filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida. On March 6, 2020, the Debtor's chapter 11 case was transferred to the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**"), where it remains pending as Case No. 20-08603 (the "**Bankruptcy Case**"). On June 11, 2020, the Bankruptcy Case was converted to chapter 7, and Gina B. Krol was appointed as Trustee.

P.      On or about June 1, 2020, CIBC filed Claim No. 10 (the "**CIBC Prepetition Claim**") in the Bankruptcy Case asserting a partially secured claim in the amount of $15,386,923.96. The CIBC Prepetition Claim is based principally on the Breach of Contract Judgment, along with the acts of fraudulent inducement underlying the Criminal Case and Civil Fraud Case.

Q.      On or about August 10 2021, the Illinois Court entered an order approving CIBC's sale of the Second RAMCO Portfolio in an amount of at least $577,688.65 with States Resources Corp., an Iowa corporation, acting as a stalking horse bidder (the "**Stalking Horse**"). The Stalking Horse's bid was the highest and best bid for the Second RAMCO Portfolio and the Stalking Horse

---

[13] *CIBC Bank USA v. Carol Delgado and Brent Houck*, Case No. CACE 18-017754 (Cir. Ct. of Broward County, Fla.).

purchased the Second RAMCO Portfolio with CIBC applying the sale proceeds against the portion of the Breach of Contract Judgment owed by RAMCO (the "**Second RAMCO Sale**", collectively the "**RAMCO Sales**").

R.      The Parties desire to enter into a Settlement and Investigation Support Agreement for the purposes of funding and otherwise supporting the Trustee's investigation and pursuit of potential sources of recovery for the benefit of the Debtor's creditors.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**AGREEMENT**

**1.      *Incorporation.*** The foregoing recitals are true and incorporated into this Agreement as though fully set forth herein by reference.

**2.      *Definitions.*** In addition to the terms defined elsewhere in this Agreement, the following definitions shall apply for the purposes of this Agreement:

(a) ***Assigned Claims.*** The term "**Assigned Claims**" shall mean, except to the extent constituting an Excluded Claim, any and all claims, choses in action, causes of action, suits, sums of money, damages, demands, judgments, and other *in personam* rights of CIBC against any Investigation Target, whether known or unknown, now owned or hereafter acquired by CIBC, whether arising under Federal, state, or foreign law, in equity, or otherwise against any Investigation Target. For the avoidance of doubt, the Assigned Claims include, without limitation, CIBC's interests in the Enforcement Actions and the claims asserted by CIBC therein.

(b) ***Assigned Collateral.*** The term "**Assigned Collateral**" shall mean any and all *in rem* interests of CIBC in the following real property of certain Investigation Targets under the security agreements, judgments, and citations described in CIBC's proof of claim (Claim No. 10): (i) 119 S. Ellsworth Avenue, Naperville, IL 60540 (the "**Ellsworth Property**") (ii) 426 W. Franklin Avenue, Naperville, IL 60540, (iii) 427 W. Benton Avenue, Naperville, IL 60540, (iv) 13043 W. Regan Road, Mokena, IL 60448, (v) 18748 Tammy Drive, Mokena, IL 60448, and (vi) the Fort Lauderdale Condo.

(c) ***Excluded Claims.*** The term "**Excluded Claims**" shall mean each of the following: (1) CIBC's rights under the Breach of Contract Judgment except to the extent it includes or serves as the basis for rights to any Assigned Collateral; (2) CIBC's rights against the Debtor and Houck in the Civil Fraud Case; (3) CIBC's rights under the Columbia Pipe Settlement; and (4) any right of CIBC to participate in, or receive restitution or forfeiture or other any other form of monetary relief, judgment, order, assets or liens in connection with or related to the Criminal Case, including, without limitation, with regards to any order, judgment, sentencing, seizure, liquidation, collections, post-judgment or forfeiture proceeding, or any other criminal proceeding involving an

Investigation Target related to the allegations in the Criminal Case. For the avoidance of doubt, the Allowed Administrative Claim and Allowed Prepetition Claim (as defined below) are not Assigned Claims or Assigned Collateral.

(d) ***Investigation Target.*** The term "**Investigation Target**" shall mean each of the following: (a) the Debtor; (b) Brent Houck; (c) Jay Delgado; (d) any family member of any of the foregoing persons; (e) any corporate or trust entity directly or indirectly owned or controlled by any of the foregoing persons; and (f) any individual or entity the Parties subsequently agree to include as an Investigation Target. For the avoidance of doubt, the Investigation Targets include, without limitation, each of the entities listed on Schedule A hereto.

**3.**   ***Assignment of the Assigned Claims & Assigned Collateral.***

3.1   Subject to Section 4 and Section 5 below, CIBC hereby assigns the Assigned Claims to the Trustee for the purpose of commencing, prosecuting, settling, releasing, and liquidating the Assigned Claims for the benefit of the Estate, subject to the Trustee's reasonable business judgment as to whether commencing or continuing any such Assigned Causes of Action would be in the best interests of the Estate. For the avoidance of doubt, CIBC acknowledges and agrees that this Agreement shall not obligate the Trustee to pursue any of the Assigned Claims.

3.2   Subject to Section 4 and Section 5 below, CIBC hereby assigns the Assigned Collateral to the Trustee for the purpose of marshaling and liquidating the Assigned Collateral for the benefit of the Estate, subject to the Trustee's reasonable business judgment as to whether administering any such item of Assigned Collateral would be in the best interests of the Estate. For the avoidance of doubt, CIBC acknowledges and agrees that this Agreement shall not obligate the Trustee to administer any portion of the Assigned Collateral.

3.3   CIBC shall, at the Trustee's reasonable request and at the Trustee's and Estate's sole cost and expense, cooperate with the Trustee to effectuate any ancillary agreements or instruments, or to take any other reasonable procedural or ministerial steps required under applicable law, to effectuate the assignment of the Assigned Assets to the Trustee. In the event the Trustee or CIBC identify any other individual, corporate or trust entity the Trustee believes in good faith to be a co-conspirator with an Investigation Target or asset of an Investigation Target that is or might be subject to a claim, cause of action, suit, lien, security interest, or other *in rem* right of CIBC, the Trustee and CIBC shall confer in good faith to develop a mutually beneficial strategy to bring any such claim, cause of action, suit or recover such asset.

**4.**   ***Allowance of CIBC's Claims Against the Estate.***

4.1   In exchange for assigning the Assigned Claims and Assigned Collateral to the Trustee, CIBC shall receive an allowed super-priority administrative expense claim (the "**Allowed Administrative Claim**") in an amount equal to the sum of:

(d) 50% of any net proceeds generated, collected or resulting from the sale of the Estate's 50% interest in the Ellsworth Property; *plus*

(e) 50% of any proceeds generated, collected or resulting from or related to the Enforcement Actions or any related judgment, including, without limitation, with regards to any order, judgment, seizure, liquidation, collection, or post-judgment proceeding; *plus*

(f) 15% of any and all of the Trustee's other gross recoveries from the Investigation Targets.

CIBC will not be required to file any proof of claim on account of the Allowed Administrative Claim in this Bankruptcy Case and the Trustee shall request and use her best efforts such that any order entered by the Bankruptcy Court in relation to the establishment of a bar date for any administrative claim shall not apply to CIBC or the Allowed Administrative Claim.

4.2     In addition to the Allowed Administrative Claim, the Trustee stipulates that (a) the CIBC Prepetition Claim shall be allowed in an amount of at least $14,647,644.60 as of June 1, 2020 *less:* (1) the amount of the Allowed Administrative Claim; and (2) the value of any assets CIBC recovers during the Bankruptcy Case on account of the Excluded Claims(the "**Allowed Prepetition Claim**"); and (b) the Loan Documents and the Guaranties and CIBC's liens are legal, valid, enforceable, non-avoidable, and constituted a partially secured claim as of the Petition Date.

## 5.     *Treatment of CIBC's Allowed Claims.*

5.1     The Allowed Administrative Claim shall be subordinate only to the allowed compensation and expenses of the Trustee and her retained professionals. Otherwise, the Allowed Administrative Claim shall be entitled to priority over all administrative expenses, priority unsecured claims, and general unsecured claims against the Estate.

5.2     Upon recovering distributable funds, subject to the Trustee's reasonable business judgment and the Bankruptcy Court's approval, the Trustee will endeavor to make interim distributions in respect of the Allowed Administrative Claim in six-month intervals. Prior to making any such interim distribution, the Trustee and CIBC will confer in good faith to determine the amount the Trustee can reasonably distribute without excessively depleting the estate's reserves. Otherwise, any distributions on account of the Allowed Administrative Claim will occur at the time the Trustee makes a final distribution to creditors.

5.3     Up to $1,213,000 of the Allowed Prepetition Claim will be entitled to payment *pari passu* with other allowed general unsecured claims against the Estate. CIBC hereby agrees to voluntarily subordinate the remainder of the Allowed Prepetition Claim until all other allowed general unsecured claims against the Estate are paid in full.

**6.**     ***CIBC Release.*** On the Effective Date (as defined below), the Trustee, on her behalf, on behalf of any successor trustees, on behalf of the Estate, on behalf of the Debtor, and on behalf of any entity that the Debtor controls or holds at least a majority interest in, including, without limitation, each of the Delgado Entities, as well as their and the Debtor's and each Delgado Entity's members, managers, agents, representatives, assigns, employees, officers, directors, attorneys, affiliates, subsidiaries, successors, assigns, predecessors, and insurers, as applicable (collectively, the "**Trustee Releasing Parties**"), hereby unconditionally, irrevocably and expressly releases, acquits, exonerates, and forever discharges CIBC and its parents, subsidiaries, affiliates, officers, directors, employees, agents, consultants, attorneys, representatives, predecessors, successors and assigns, both present and former, and any person acting on each of their behalf (collectively, the "**CIBC Released Parties**") from any and all manner of action, including but not limited to, all liens, damages, losses, claims, demands, judgments, attorneys' fees, experts fees and expenses of every kind, liabilities, obligations, actions, suits, defenses, controversies, executions, and causes of action whatsoever which any and all Trustee Releasing Parties could have asserted, did assert, may now have or claim to have against any CIBC Released Party, whether in law, in equity, or statutory, and whether presently known or unknown, matured or contingent, liquidated or unliquidated, including any claims, defenses, and affirmative defenses which were, or which could have been asserted, including, without limitation, with respect to the Debtor, the Estate, the Loan Agreements, the Guaranties, the Breach of Contract Action, the Receiver, the Receivership, the Delgado Entities, the Civil Fraud Case, the Delgado Borrowers Bankruptcy Cases, the Breach of Contract Judgment, Houck, the Criminal Case, the RAMCO Portfolios, the RAMCO Holdings Action, the Columbia Pipe Settlement Agreement, the Florida Foreclosure Action, the RAMCO Sales, the 2019 Lawsuit, the Bankruptcy Case, the CIBC Prepetition Claim, and each of the Trustee Releasing Parties. With respect to such unknown or unanticipated claims, the Trustee Releasing Parties each hereby knowingly, voluntarily and expressly waives all rights and benefits otherwise conferred by the provisions of California Civil Code section 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**7.**     ***No Prior Assignment of Claims or Interests.*** CIBC represents and warrants that it has not made or caused to be made any assignment or transfer of any right, claim, demand, cause of action, or *in rem* interest with respect to the Assigned Collateral or Enforcement Actions.

**8.**     ***Discharge Objection Rights***. For the avoidance of doubt, CIBC expressly retains its right to have all or part of its claims against the Debtor to be determined to be non-dischargeable under section 523 of the Bankruptcy Code.

**9.**     ***Good-Faith Cooperation.***  , CIBC will make reasonable and good-faith efforts to cooperate with the reasonable requests of the Trustee in her investigation or litigation of any matter related to the Investigation Targets, the Assigned Claims, the Assigned Collateral, or the Bankruptcy Case, including by providing any documents or information (specifically excepting any privileged, confidential or irrelevant documents, communications or information, as determined by CIBC in its sole discretion) that the Trustee may reasonably and in good-faith request.

**10.**    *Court Approval.* The Trustee shall promptly file with the Bankruptcy Court a motion (the "**Approval Motion**") reasonably acceptable to CIBC requesting authority for the Trustee to enter into this Agreement and to make and honor all promises and releases contained herein. The entry of an Order in form and content reasonably acceptable to CIBC granting the Approval Motion shall be a condition precedent to this Agreement.

**11.**    *No Oral Amendment or Waiver*.  The Parties shall not at any time be deemed, by any act or omission, to have waived any of their rights or remedies under this Agreement, unless such waiver is in writing and signed by the Party against whom waiver is sought to be enforced.  A waiver of one event shall not be construed as a continuing waiver or as a bar to or waiver of any right or remedy in connection with any subsequent event.

**12.**    *Complete Agreement.*  This Agreement constitutes the full and complete understanding of the Parties regarding its subject matter and supersedes any prior understanding or agreement, whether oral or in writing.  No provision of this Agreement may be amended, modified, supplemented, changed, waived, discharged or terminated, except by an instrument in writing signed by an authorized representative of the party against whom enforcement of the amendment, modification, supplementation, change, waiver, discharge or termination is sought.

**13.**    *Successor Bound.*  This Agreement is binding on and inures to the benefit of the Parties and their respective agents, servants, employees, directors, officers, attorneys, accountants, affiliates, stockholders, members, partners, representatives, receivers, trustees, parents, subsidiaries, predecessors, successors, heirs and assigns.

**14.**    *Severability*.  In the event that any term, covenant or provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or against public policy, the remaining provisions of this Agreement shall remain in full force and effect, unless the effect of such determination would be to deny one of the parties hereto the substantial performance for which such party had contracted (in which case the parties agree that the court may reform the contract as necessary to achieve substantial performance for which the parties had contracted).

**15.**    *Voluntary Agreement.*  The Parties individually represent, warrant and agree that: (a) they have been represented by legal counsel of their choice in connection with the entering into this Agreement; (b) they are fully aware and clearly understand all of the terms and provisions contained in this Agreement; (c) they have voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement; (d) they are not relying on any representation, either written or oral, express or implied, made to them by any other Party other than as set forth in this Agreement; and (e) the consideration received by them to enter into this Agreement has been actual and adequate.  Further, the Parties represent, warrant and agree that they have relied upon the advice of their attorneys concerning the legal consequences of this Agreement.

**16.**    *Warranted Capacity To Execute Agreement.*  Subject to Trustee obtaining the approval of the Bankruptcy Court to enter into this Agreement, the Parties represent and warrant to each other that they have the capacity and authority to execute this Agreement. Each person executing this Agreement in a representative capacity warrants to the other Party that they have the right, power,

legal capacity, and authority to enter into this Agreement on behalf of the represented Party.

**17.** *Construction of Terms.* The terms of this Agreement are contractual and not mere recitals, and no representations have been made which are not contained herein. This Agreement was drafted with the input and comments of the Parties. In the event of a dispute concerning the interpretation of any provision of this Agreement or any related document, the rule of construction to the effect that certain ambiguities are to be construed against the party drafting a document will not apply. All prior representations and understandings relied upon by the Parties have been incorporated into the text of this Agreement.

**18.** *Captions*. The captions and headings used in this Agreement are inserted for reference purposes only and shall not be deemed to define, limit, extend, describe, or affect in any way the meaning, scope or interpretation of any of the terms of this Agreement or its intent.

**19.** *Governing Law, Jurisdiction and Venue*. This Agreement shall be deemed to be a contract made under the laws of the State of Illinois and shall, for all purposes, be construed and enforced in accordance with said laws but without regard to its choice of law rules. The Parties agree that, to the extent a lawsuit is filed by either of them to interpret and/or enforce this Agreement, that any such lawsuit shall be filed in the Bankruptcy Court.

**20.** *Time of the Essence.* Time is of the essence in the performance of each and every part of this Agreement.

**21.** *Counterparts.* This Agreement may be executed in counterparts, each of which will be deemed an original document, with the same force and effect as if all signatures appeared on one document. This Agreement also may be executed by facsimile or email signature with a copy of the signed original provided to counsel for the Parties by email or ordinary mail.

**22.** *Effective Date.* This Agreement shall become effective (the "**Effective Date**") on the latter of (i) the date it is executed by the last Party to sign the Agreement; or (ii) the entry of a final Order in form and substance satisfactory to CIBC by the Bankruptcy Court granting the Approval Motion, which final order shall not be subject to appeal, review, reargument or rehearing.

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the Effective Date.

[Signatures on following page]

10

**CIBC Bank USA (f/k/a The Private Bank
and Trust Company)**


By:_____
        David Gozdecki
        Managing Director

**GINA B. KROL**, as Chapter 7 Trustee
for Carol J. Delgado



By:_____
        Gina B. Krol, as Chapter 7 Trustee

**Schedule A**
**Investigation Targets (Non-Exhaustive)**

- Carol Delgado
- Brent Houck
- Jay Delgado
- Janaye Delgado
- Nicolas Delgado
- Renewable Asset Management Company, LLC;
- RAMCO Holdings, LLC;
- RAMCO Capital Group, LLC;
- Rooftop O&M, LLC,
- Project Solar, LLC;
- RAMCO Residential Fund I, LLC.
- Financial Management Services, Inc.
- FMSI of Delaware, Inc.
- FMSI Financial Resources, LLC
- FMSI Consumer Credit Corp.
- Three Marketiers, LLC.
- Ellsworth Investment Group, LLC
- Trust No. 8002368555 of Chicago Title Land Trust Company
- Carent Stables, LLC
- JNG Global Holdings, LLC
- Morgan Property Ventures, LLC
- Outsource Services, LLC
- Corry's Tile Creations, LLC (a/k/a Corry's Creations & Construction)
- Solar IAD, LLC
- A2Z Property Management Services Corp.
- Lease-It Corp.
- Morgan Properties Co, LLC
- JNG Holdings Co, LLC
- Equipment Finance Group, LLC
- Janaye-Alexis, LLC
- Renew Capital Group
- Spring Branch Holdings, Inc.
- MCM Manufacturing, Inc.
- Ironton Truck Line, Inc.
- Consolidated Marketing and Communications LLC