

# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

1. **THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties."
   Buyer Name(s) [PLEASE PRINT] **Mark Dixon , Ruth Anne Rehfeldt**
   Seller Name(s) [PLEASE PRINT] **Gina B. Krol, as Chapter 7 Trustee of the estate of Carol J. Delgado**
   If Dual Agency applies, check here ❏ and complete Optional Paragraph 29.

2. **THE REAL ESTATE:** Real Estate is defined as the property, all improvements, the fixtures and Personal Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with approximate lot size or acreage of **Less Than .25 Acre** commonly known as:
   **119 S ELLSWORTH St**      **Naperville**    **IL**    **60540**    **DuPage**
   Address    Unit # (If applicable)    City    State    Zip    County
   Permanent Index Number(s): **0818313028**    ❏ Single Family Attached ☒ Single Family Detached ❏ Multi-Unit
   **If Designated Parking is Included:** # of space(s) _____; identified as space(s) # _____; location _____
   [CHECK TYPE] ❏ deeded space, PIN: _____ ❏ limited common element ❏ assigned space.
   **If Designated Storage is Included:** # of space(s) _____; identified as space(s) # _____; location _____
   [CHECK TYPE] ❏ deeded space, PIN: _____ ❏ limited common element ❏ assigned space.

3. **FIXTURES AND PERSONAL PROPERTY AT NO ADDED VALUE:** All of the fixtures and included Personal Property are owned by Seller and to Seller's knowledge are in operating condition on Date of Acceptance, unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing, and well systems together with the following items at no added value by Bill of Sale at Closing [CHECK OR ENUMERATE APPLICABLE ITEMS]:

   | | | | |
   |---|---|---|---|
   | ☒ Refrigerator | __ Wine/Beverage Refrigerator | ☒ Light Fixtures, as they exist | ☒ Fireplace Gas Log(s) |
   | ☒ Oven/Range/Stove | __ Sump Pump(s) | ☒ Built-in or attached shelving | __ Smoke Detectors |
   | __ Microwave | __ Water Softener (unless rented) | __ All Window Treatments & Hardware | __ Carbon Monoxide Detectors |
   | __ Dishwasher | ☒ Central Air Conditioning | __ Satellite Dish | __ Invisible Fence System, Collar & Box |
   | __ Garbage Disposal | __ Central Humidifier | __ Wall Mounted Brackets (AV/TV) | __ Garage Door Opener(s) |
   | __ Trash Compactor | __ Central Vac & Equipment | __ Security System(s) (unless rented) | with all Transmitters |
   | __ Washer | ☒ All Tacked Down Carpeting | __ Intercom System | __ Outdoor Shed |
   | __ Dryer | ☒ Existing Storms & Screens | __ Electronic or Media Air Filter(s) | __ Outdoor Playset(s) |
   | __ Attached Gas Grill | __ Window Air Conditioner(s) | __ Backup Generator System | __ Planted Vegetation |
   | ☒ Water Heater | __ Ceiling Fan(s) | ☒ Fireplace Screens/Doors/Grates | __ Hardscape |

   **Other Items Included at No Added Value:** _____
   **Items Not Included:** _____
   Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in operating condition at Possession except: _____.
   A system or item shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a threat to health or safety.
   **If Home Warranty applies, check here ❏ and complete Optional Paragraph 32.**

4. **PURCHASE PRICE AND PAYMENT:** The Purchase Price is $ **535,000** . After the payment of Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing in "Good Funds" as defined by law.

   a) **CREDIT AT CLOSING:** [IF APPLICABLE] Provided Buyer's lender permits such credit to show on the final settlement statement or lender's closing disclosure, **and if not, such lesser amount as the lender permits**, Seller agrees to credit $ _____ to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

   b) **EARNEST MONEY:** Earnest Money of $ **10,000** shall be tendered to Escrowee on or before **2** Business Days after Date of Acceptance. Additional Earnest Money, if any, of $ _____ shall be tendered by _____, 20 ___. Earnest Money shall be held in trust for the mutual benefit of the Parties by

*Buyer Initial* [signature] *Buyer Initial* [signature]    *Seller Initial* **GBK**    *Seller Initial* _____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**    *v7.0*

Page 1 of 13

DocuSign Envelope ID: 65AF3B1A-49ED-4E67-8FC1-09BEA54062AB

45     [CHECK ONE]: ☐ Seller's Brokerage; ☒ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee."
46     **In the event the Contract is declared null and void or is terminated, Earnest Money shall be disbursed pursuant to Paragraph 26.**
47     c) **BALANCE DUE AT CLOSING:** The Balance Due at Closing shall be the Purchase Price, plus or minus
48     prorations, less Earnest Money paid, less any credits at Closing, and shall be payable in Good Funds at Closing.

49 **5. CLOSING:** Closing shall be on **February 13**, 20 **23** or at such time as mutually agreed by the Parties in
50 writing. Closing shall take place at the escrow office of the title insurance company, its underwriter, or its issuing
51 agent that will issue the Owner's Policy of Title Insurance, whichever is situated nearest the Real Estate.

52 **6. POSSESSION:** Unless otherwise provided in Optional Paragraph 35, Seller shall deliver possession to Buyer at
53 Closing. Possession shall be deemed to have been delivered when Seller and all occupants (if any) have vacated
54 the Real Estate and delivered keys to the Real Estate to Buyer or to the office of the Seller's Brokerage.

55 **7. FINANCING:** [INITIAL ONLY ONE OF THE FOLLOWING SUBPARAGRAPHS a, b, or c]

56 ___ ___ ___ ___ a) **LOAN CONTINGENCY:** Not later than **forty-five (45) days after Date of Acceptance or five**
57 **(5) Business Days prior to the date of Closing**, whichever is earlier, ("Loan Contingency Date") Buyer shall
58 provide written evidence from Buyer's licensed lending institution confirming that Buyer has received loan
59 approval subject only to "at close" conditions, matters of title, survey, and matters within Buyer's control for a loan
60 as follows: [CHECK ONE] ☐ fixed; ☐ adjustable; [CHECK ONE] ☐ conventional; ☐ FHA; ☐ VA; ☐ USDA;
61 ☐ other _____ loan for ____ % of the Purchase Price, plus private mortgage insurance (PMI),
62 if required, with an interest rate (initial rate if an adjustable rate mortgage used) not to exceed ____ % per annum,
63 amortized over not less than ____ years. Buyer shall pay discount points not to exceed ____ % of the loan amount.
64 Buyer shall pay origination fee(s), closing costs charged by lender, and title company escrow closing fees.
65 If Buyer, having applied for the loan specified above, is unable to provide such loan approval and serves Notice to
66 Seller not later than the Loan Contingency Date, this Contract shall be null and void. If Buyer is unable to provide
67 such written evidence not later than the date specified herein or by any extension date agreed to by the Parties,
68 Seller shall have the option of declaring this Contract terminated by giving Notice to Buyer. If prior to the Seller
69 serving such Notice to terminate, Buyer provides written evidence of such loan approval, this Contract shall remain
70 in full force and effect.
71 Upon the expiration of ten (10) Business Days after Date of Acceptance, if Buyer has failed to make a loan
72 application and pay all fees required for such application to proceed and the appraisal to be performed, Seller shall
73 have the option to declare this Contract terminated by giving Notice to Buyer not later than five (5) Business Days
74 thereafter or any extension thereof agreed to by the Parties in writing.
75 **A Party causing delay in the loan approval process shall not have the right to terminate under this**
76 **subparagraph. In the event neither Party elects to declare this Contract terminated as specified above, or as**
77 **otherwise agreed, then this Contract shall continue in full force and effect without any loan contingencies.**
78 **Unless otherwise provided in Paragraph 30, this Contract is not contingent upon the sale and/or closing of**
79 **Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this subparagraph
80 if Buyer obtains a loan approval in accordance with the terms of this subparagraph even though the loan is
81 conditioned on the sale and/or closing of Buyer's existing real estate.
82 If Buyer is seeking FHA, VA, or USDA financing, **required amendments and disclosures shall be attached to this**
83 **Contract.** If VA, the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP), shall be paid by Buyer.

84 ___ ___ ___ ___ b) **CASH TRANSACTION WITH NO MORTGAGE:** [ALL CASH] If this selection is made, Buyer will pay
85 at Closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer,
86 that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
87 representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
88 Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds

*Buyer Initial* _[signed]_ *Buyer Initial* _[signed]_      *Seller Initial* **GBK** *Seller Initial* _____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**      *v7.0*
Page 2 of 13

to close. Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from satisfying the Balance Due at Closing, shall constitute a material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real estate.**

_[signed]_ c) **CASH TRANSACTION, MORTGAGE ALLOWED:** If this selection is made, Buyer will pay at closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the Balance Due at Closing. Such cooperation shall include the performance in a timely manner of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent upon Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from satisfying the Balance Due at Closing shall constitute a material breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee if Buyer obtains a mortgage; provided however, if Buyer elects to close without a mortgage loan, the Parties shall share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real estate.**

8. **STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:

*[CHECK ONE]* ❑ has ☑ has not received a completed Illinois Residential Real Property Disclosure;
*[CHECK ONE]* ☑ has ❑ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home;"
*[CHECK ONE]* ❑ has ☑ has not received a Lead-Based Paint Disclosure;
*[CHECK ONE]* ☑ has ❑ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions;"
*[CHECK ONE]* ❑ has ☑ has not received the Disclosure of Information on Radon Hazards.

9. **PRORATIONS:** The requirements contained in this paragraph shall survive the Closing. Proratable items shall be prorated to and including the Date of Closing and shall include without limitation, general real estate taxes, rents and deposits (if any) from tenants; Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer, pre-purchased fuel; and Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item.

   a) The general real estate taxes shall be prorated to and including the date of Closing based on **100** % of the most recent ascertainable full year tax bill. All general real estate tax prorations shall be final as of Closing, except as provided in Paragraph 23. If the amount of the most recent ascertainable full year tax bill reflects a homeowner, senior citizen, disabled veteran or other exemption, a senior freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s). **The proration shall not include exemptions to which the Seller is not lawfully entitled.**

   b) Seller represents, if applicable, that as of Date of Acceptance Homeowner/Condominium Association(s) fees are $ **0** per **Not Applicable** (and, if applicable, Master/Umbrella Association fees are $ **Not Applicable** per _____). Seller agrees to pay prior to or at Closing the remaining balance of any special assessments by the Association(s) confirmed prior to Date of Acceptance.

Buyer Initial _[signed]_ Buyer Initial _[signed]_    Seller Initial **GBK** Seller Initial _____
Address: **119 S ELLSWORTH St, Naperville, IL 60540**                                    v7.0

    c) Special Assessment Area or Special Service Area installments due after the year of Closing shall not be proratable items and shall be paid by Buyer, unless otherwise provided by ordinance or statute.

**10. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective Parties, by Notice, may:

    a) Approve this Contract; or

    b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or

    c) Propose modifications to this Contract, except for the Purchase Price, which proposal shall be conclusively deemed a counteroffer notwithstanding any language contained in any such proposal purporting to state the proposal is not a counteroffer. If after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by the Parties with respect to resolution of all proposed modifications, either Party may terminate this Contract by serving Notice, whereupon this Contract shall be immediately deemed terminated; or

    d) Offer proposals specifically referring to this subparagraph d) which shall not be considered a counteroffer. Any proposal not specifically referencing this subparagraph d) shall be deemed made pursuant to subparagraph c) as a modification. If proposals made with specific reference to this subparagraph d) are not agreed upon, **neither** Buyer nor Seller may declare this contract null and void, and this contract shall remain in full force and effect.

**If Notice of disapproval or proposed modifications is not served within the time specified herein, the provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force and effect. If Notice of termination is given, said termination shall be absolute and the Contract rendered null and void upon the giving of Notice, notwithstanding any language proffered by any Party purporting to permit unilateral reinstatement by withdrawal of any proposal(s).**

**11. WAIVER OF PROFESSIONAL INSPECTIONS:** *[INITIAL IF APPLICABLE]* _____ Buyer acknowledges the right to conduct inspections of the Real Estate and hereby waives the right to conduct any such inspections of the Real Estate, and further agrees that the provisions of Paragraph 12 shall not apply.

**12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** *[NOT APPLICABLE IF PARAGRAPH 11 IS INITIALED]* Buyer may conduct at Buyer's expense (unless payment for such expense is otherwise required by governmental regulation) any or all of the following inspections of the Real Estate by one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based paint hazards or wood-destroying insect infestation, or any other inspections desired by Buyer in the exercise of reasonable due diligence. Seller agrees to make all areas of the Real Estate accessible for inspection(s) upon reasonable notice and to have all utilities turned on during the time of such inspections. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by any acts of Buyer or any person performing any inspection on behalf of Buyer.

    a) The request for repairs shall cover only the major components of the Real Estate, limited to central heating and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors, appliances and foundation. A major component shall be deemed to be in operating condition, and therefore not defective within the meaning of this paragraph, if it does not constitute a current threat to health or safety, and performs the function for which it is intended, regardless of age or if it is near or at the end of its useful life. Minor repairs, routine maintenance items and painting, decorating or other items of a cosmetic nature, no matter the cost to remedy same, do not constitute defects, are not a part of this contingency and shall not be a basis for the Buyer to cancel this Contract. **A request by Buyer for credits or repairs in violation of the terms of this subparagraph shall allow Seller to declare this Contract terminated and direct the return of Buyer's Earnest Money.** If radon mitigation is performed, Seller shall pay for any retest.

Buyer Initial _____ Buyer Initial _____       Seller Initial _GBK_ Seller Initial _____
Address: **119 S ELLSWORTH St, Naperville, IL 60540** _v7.0_

b) Buyer shall serve Notice upon Seller or Seller's attorney of any major component defects disclosed by any inspection for which Buyer requests resolution by Seller within five (5) Business Days (ten (10) calendar days for a lead-based paint or lead-based paint hazard inspection) after Date of Acceptance. **Buyer shall not send any portion of the inspection report with the Notice provided under this subparagraph unless such inspection report, or any part thereof, is specifically requested in writing by Seller or Seller's attorney.** If after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by the Parties with respect to resolution of all inspection issues, either Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be immediately deemed terminated.

c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller within five (5) Business Days after Date of Acceptance, this Contract shall be null and void. Said Notice shall not include any portion of the inspection reports unless requested by Seller.

d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain in full force and effect.**

**13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business Days after Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice with proof of same to Seller within the time specified, this Contract shall be null and void. If Notice is not served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect.**

**14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to Seller within ten (10) Business Days after Date of Acceptance or by the Loan Contingency Date, whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.** Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

**15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** *[IF APPLICABLE]* The Parties agree that the terms contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting terms, and shall apply to property subject to the Illinois Condominium Property Act and the Common Interest Community Association Act or other applicable state association law ("Governing Law").

a) Title when conveyed shall be good and merchantable, subject to terms and provisions of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all amendments; public and utility easements including any easements established by or implied from the Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Governing Law; installments due after the date of Closing of general assessments established pursuant to the Declaration/CCRs.

b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all special assessments confirmed prior to Date of Acceptance.

c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.

d) Seller shall, within ten (10) Business Days from Date of Acceptance, apply for those items of disclosure upon sale as described in the Governing Law, and provide same in a timely manner, but no later than the time period provided for by law. This Contract is subject to the condition that Seller be able to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to purchase created by the

Buyer Initial _____ Buyer Initial _____     Seller Initial __GBK__ Seller Initial _____
Address: **119 S ELLSWORTH St, Naperville, IL 60540**                       v7.0

DocuSign Envelope ID: 65AF3B1A-49ED-4E67-8FC1-09BEA54062AB
Case 20-08603    Doc 217-1    Filed 01/19/23    Entered 01/19/23 14:37:08    Desc Exhibit
A    Page 6 of 17

220 Declaration/CCRs. In the event the Condominium Association requires the personal appearance of Buyer or
221 additional documentation, Buyer agrees to comply with same.
222 e) In the event the documents and information provided by Seller to Buyer disclose that the existing
223 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
224 conditions contained within the documents would unreasonably restrict Buyer's use of the Real Estate or
225 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
226 Buyer may declare this Contract null and void by giving Notice to Seller within five (5) Business Days after the
227 receipt of the documents and information required by this paragraph, listing those deficiencies which are
228 unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have waived
229 this contingency, and this Contract shall remain in full force and effect.
230 f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

231 **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
232 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
233 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
234 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to:
235 covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not
236 interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and payable
237 at the time of Closing.

238 **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
239 a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
240 closing inspection or disclosure requirement, municipal Transfer Tax or other similar ordinances. Cost of
241 transfer taxes, inspection fees, and any repairs required by an inspection pursuant to municipal ordinance shall
242 be paid by the Party designated in such ordinance unless otherwise agreed to by the Parties.
243 b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
244 Revenue Code, the Foreign Investment in Real Property Tax Act (FIRPTA), and the Real Estate Settlement
245 Procedures Act of 1974, as amended.

246 **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
247 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
248 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a
249 title company licensed to operate in the State of Illinois, issued on or subsequent to Date of Acceptance, subject
250 only to items listed in Paragraph 16 and shall cause a title policy to be issued with an effective date as of Closing.
251 The requirement to provide extended coverage shall not apply if the Real Estate is vacant land. The commitment
252 for title insurance furnished by Seller will be presumptive evidence of good and merchantable title as therein
253 shown, subject only to the exceptions therein stated. **If the title commitment discloses any unpermitted**
254 **exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to**
255 **Buyer, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title**
256 **insurer commit to either insure against loss or damage that may result from such exceptions or survey matters**
257 **or insure against any court-ordered removal of the encroachments.** If Seller fails to have such exceptions waived
258 or insured over prior to Closing, Buyer may elect to take title as it then is with the right to deduct from the Purchase
259 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish to Buyer at Closing an Affidavit
260 of Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
261 Insurance Policy.

262 **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
263 condominium, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms

Buyer Initial _____ Buyer Initial _____    Seller Initial  GBK   Seller Initial _____
Address: **119 S ELLSWORTH St, Naperville, IL 60540**                                   v7.0

to the current Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at all accessible corners of the land. **All such corners shall also be visibly staked or flagged**. The Plat of Survey shall include the following statement placed near the professional land surveyor's seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

**20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of Earnest Money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract, except as modified by this paragraph.

**21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate, fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and included Personal Property are in substantially the same condition as of Date of Acceptance, normal wear and tear excepted.

**22. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing. Seller represents that with respect to the Real Estate, Seller has no knowledge of, nor has Seller received any written notice from any association or governmental entity regarding:
   a) zoning, building, fire or health code violations that have not been corrected;
   b) any pending rezoning;
   c) boundary line disputes;
   d) any pending condemnation or Eminent Domain proceeding;
   e) easements or claims of easements not shown on the public records;
   f) any hazardous waste on the Real Estate;
   g) real estate tax exemption(s) to which Seller is not lawfully entitled; or
   h) any improvements to the Real Estate for which the required initial and final permits were not obtained.

Seller further represents that:

[INITIALS] _____ There [CHECK ONE] ❏ are ☒ are not improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment.

[INITIALS] _____ There [CHECK ONE] ❏ are ☒ are not improvements to the Real Estate which are eligible for the home improvement tax exemption.

[INITIALS] _____ There [CHECK ONE] ❏ is ☒ is not an unconfirmed pending special assessment affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.

[INITIALS] _____ The Real Estate [CHECK ONE] ❏ is ☒ is not located within a Special Assessment Area or Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs. All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of matters that require modification of the representations previously made in this Paragraph 22, Seller shall

Buyer Initial _____ Buyer Initial _____      Seller Initial _GBK_  Seller Initial _____
Address: **119 S ELLSWORTH St, Naperville, IL 60540** _____ *v*7.0
*Page 7 of 13*

promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may terminate this Contract by Notice to Seller and this Contract shall be null and void.

**23. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's obligation after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly upon demand.

**24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal holidays. Business Hours are defined as 8 a.m. to 6 p.m. Chicago time. In the event the Closing or Loan Contingency Date described in this Contract does not fall on a Business Day, such date shall be the next Business Day.

**25. ELECTRONIC OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of executing, negotiating, finalizing, and amending this Contract, and delivery thereof by one of the following methods shall be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be produced by scanning an original, hand-signed document and transmitting same by electronic means. An acceptable digital signature may be produced by use of a qualified, established electronic security procedure mutually agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating the digital signature and sending same by electronic mail.

**26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of competent jurisdiction."
In the event either Party has declared the Contract null and void or the transaction has failed to close as provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court order, the Escrowee may elect to proceed as follows:

a) Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee intends to disburse in the absence of any written objection. If no written objection is received by the date indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice to the Parties. **If any Party objects in writing** to the intended disbursement of Earnest Money then Earnest Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a court of competent jurisdiction.

b) Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify Escrowee for additional costs and fees incurred in filing the Interpleader action.

**27. NOTICE:** Except as provided in Paragraph 30 c) 2) regarding the manner of service for "kick-out" Notices, all Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:

a) By personal delivery; or

*Buyer Initial* _____ *Buyer Initial* _____   *Seller Initial* _GBK_ *Seller Initial* _____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**                                    *v7.0*

b) By mailing to the addresses recited herein on Page 13 by regular mail and by certified mail, return receipt requested. Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or

c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after transmission; or

d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may opt out of future e-mail Notice by any form of Notice provided by this Contract; or

e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day following deposit with the overnight delivery company.

f) If a Party fails to provide contact information herein, as required, Notice may be served upon the Party's Designated Agent in any of the manners provided above.

g) The Party serving a Notice shall provide courtesy copies to the Parties' Designated Agents. Failure to provide such courtesy copies shall not render Notice invalid.

**28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

**THE FOLLOWING NUMBERED PARAGRAPHS ARE A PART OF THIS CONTRACT ONLY IF INITIALED BY THE PARTIES.**

[INITIALS] ____ ____ ____ ____ **29. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously consented to _____ [LICENSEE] acting as a Dual Agent in providing brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

____ ____ ____ ____ **30. SALE OF BUYER'S REAL ESTATE:**

a) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:

1) Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:

_____.
Address                                  City                    State                Zip

2) Buyer [CHECK ONE] ❏ has ❏ has not entered into a contract to sell Buyer's real estate.
   If Buyer has entered into a contract to sell Buyer's real estate, that contract:
   a) [CHECK ONE] ❏ is ❏ is not subject to a mortgage contingency.
   b) [CHECK ONE] ❏ is ❏ is not subject to a real estate sale contingency.
   c) [CHECK ONE] ❏ is ❏ is not subject to a real estate closing contingency.

3) Buyer [CHECK ONE] ❏ has ❏ has not publicly listed Buyer's real estate for sale with a licensed real estate broker and in a local multiple listing service.

4) If Buyer's real estate is not publicly listed for sale with a licensed real estate broker and in a local multiple listing service, Buyer [CHECK ONE]:
   a) ❏ Shall publicly list real estate for sale with a licensed real estate broker who will place it in a local multiple listing service within five (5) Business Days after Date of Acceptance.
      [FOR INFORMATION ONLY] Broker: _____
      Broker's Address: _____ Phone: _____
   b) ❏ Does not intend to list said real estate for sale.

*Buyer Initial* ___[DS]___ *Buyer Initial* ___[DS]___         *Seller Initial* _GBK_ *Seller Initial* ____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**                                    v7.0

b) **CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**

1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that is in full force and effect as of _____, 20 ____. Such contract should provide for a closing date not later than the Closing Date set forth in this Contract. **If Notice is served on or before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's real estate is not served on or before the close of business on the date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.** (If this paragraph is used, then the following paragraph **must** be completed.)

2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 30 b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of Buyer's real estate on or before _____, 20 ____. **If Notice that Buyer has not closed the sale of Buyer's real estate is served before the close of business on the next Business Day after the date set forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.**

3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 30 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 30 b) 1)), Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination. **Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 30 and complies with Paragraph 30 d), this Contract shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.**

c) **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency, Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:

1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in Paragraph 30 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have ____ hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 30 b), subject to Paragraph 30 d).

2) Seller's Notice to Buyer (commonly referred to as a "kick-out" Notice) shall be in writing and shall be served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out" Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
   a) By personal delivery effective at the time and date of personal delivery; or
   b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be effective at 10 a.m. on the morning of the second day following deposit of Notice in the U.S. Mail; or
   c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4 p.m. Chicago time on the next delivery day following deposit with the overnight delivery company, whichever first occurs.

3) If Buyer complies with the provisions of Paragraph 30 d) then this Contract shall remain in full force and effect.

4) If the contingencies set forth in Paragraph 30 b) are NOT waived in writing within said time period by Buyer, this Contract shall be null and void.

5) Except as provided in Paragraph 30 c) 2) above, all Notices shall be made in the manner provided by Paragraph 27 of this Contract.

6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or representative.

*Buyer Initial* [signed] *Buyer Initial* [signed]   *Seller Initial* GBK  *Seller Initial* _____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**                                  v7.0
Page 10 of 13

d) **WAIVER OF PARAGRAPH 30 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in Paragraph 30 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest money in the amount of $ _____ in the form of a cashier's or certified check within the time specified. **If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be deemed ineffective and this Contract shall be null and void.**

e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained in Paragraph 30 at any time, and Buyer agrees to cooperate in providing relevant information.

____ ____ ____ ____ **31. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before _____, 20 ____. **In the event the prior contract is not cancelled within the time specified, this Contract shall be null and void. If prior contract is subject to Paragraph 30 contingencies, Seller's notice to the purchaser under the prior contract should not be served until after Attorney Review and Professional Inspections provisions of this Contract have expired, been satisfied or waived.**

____ ____ ____ ____ **32. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost of $ _____. Evidence of a fully pre-paid policy shall be delivered at Closing.

____ ____ ____ ____ **33. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to Closing, stating that the well and water supply and the private sanitary system are in operating condition with no defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000, and if the Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to Closing.

____ ____ ____ ____ **34. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12, within ten (10) Business Days after Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

____ ____ ____ ____ **35. POSSESSION AFTER CLOSING:** Possession shall be delivered no later than 11:59 p.m. on the date that is *[CHECK ONE]* ❑ ____ days after the date of Closing or ❑ _____, 20 ____ ("the Possession Date"). Seller shall be responsible for all utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall deposit in escrow at Closing with an escrowee as agreed, the sum of $ _____ (if left blank, two percent (2%) of the Purchase Price) and disbursed as follows:

  a) The sum of $ _____ per day for use and occupancy from and including the day after Closing to and including the day of delivery of Possession if on or before the Possession Date;

  b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

*Buyer Initial* _[signed]_ *Buyer Initial* _[signed]_     *Seller Initial* _GBK_ *Seller Initial* _____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540** _____ *v7.0*
*Page 11 of 13*

481   c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have
482   been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
483   deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

484   _[initials]_ **36. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As Is"
485   condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect
486   to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those known
487   defects, if any, disclosed by Seller. Buyer may conduct at Buyer's expense such inspections as Buyer desires. In that
488   event, Seller shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller
489   and hold Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
490   performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is unacceptable**
491   **to Buyer and Buyer so notifies Seller within five (5) Business Days after Date of Acceptance, this Contract shall be**
492   **null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and Buyer shall not be obligated**
493   **to send the inspection report to Seller absent Seller's written request for same. Failure of Buyer to notify Seller or**
494   **to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and**
495   **this Contract shall remain in full force and effect.** Buyer acknowledges that the provisions of Paragraph 12 and the
496   warranty provisions of Paragraph 3 do not apply to this Contract. Nothing in this paragraph shall prohibit the exercise
497   of rights by Buyer in Paragraph 33, if applicable.

498   ____ ____ ____ ____ **37. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
499   Estate by _____ Buyer's Specified Party, within five (5) Business Days after Date
500   of Acceptance. In the event Buyer's Specified Party does not approve of the Real Estate and Notice is given to Seller
501   within the time specified, this Contract shall be null and void. If Notice is not served within the time specified, this
502   provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

503   ____ ____ ____ ____ **38. ATTACHMENTS:** The following attachments, if any, are hereby incorporated into this Contract
504   *[IDENTIFY BY TITLE]*: _____
505   _____.

506   ____ ____ ____ ____ **39. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
507   Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and with
508   such additional terms as either Party may deem necessary, providing for one or more of the following *[CHECK APPLICABLE BOXES]*:

509   ❏ Articles of Agreement for Deed          ❏ Assumption of Seller's Mortgage     ❏ Commercial/Investment
510   ❏ or Purchase Money Mortgage              ❏ Cooperative Apartment                ❏ New Construction
511   ❏ Short Sale                              ❏ Tax-Deferred Exchange                ❏ Vacant Land
512   ❏ Multi-Unit (4 Units or fewer)           ❏ Interest Bearing Account             ❏ Lease Purchase

*Buyer Initial* _[initials]_ *Buyer Initial* _[initials]_        *Seller Initial* _GBK_ *Seller Initial* ____
*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**                                                   *v7.0*
Page 12 of 13

513 THE PARTIES ACKNOWLEDGE THAT THIS CONTRACT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND IS SUBJECT TO THE
514 COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN ALL ILLINOIS CONTRACTS.
515 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.
516 THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL MULTI-
517 BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0.

| | |
|---|---|
| **12/29/2022** | 1/17/2023 |
| Date of Offer | DATE OF ACCEPTANCE |
| *[Buyer Signature]* | *[Seller Signature]* |
| Buyer Signature | Seller Signature |
| *[Buyer Signature]* | |
| Buyer Signature | Seller Signature |
| **Mark Dixon , Ruth Anne Rehfeldt** | Gina B. Krol, as Chapter 7 Trustee of the estate of Carol J. Delgado |
| Print Buyer(s) Name(s) *[REQUIRED]* | Print Seller(s) Name(s) *[REQUIRED]* |
| **908 Julian Ct** | 105 W. Madison St, Suite 1100 |
| Address *[REQUIRED]* | Address *[REQUIRED]* |
| **Naperville IL 60540** | Chicago, IL 60602 |
| City, State, Zip *[REQUIRED]* | City, State, Zip *[REQUIRED]* |
| Phone     E-mail | Phone     E-mail |

**FOR INFORMATION ONLY**

| | | | | | |
|---|---|---|---|---|---|
| **john greene, Realtor** | **23120** | **477010420** | **Millennium Properties RE, Inc.** | **14652** | |
| Buyer's Brokerage | MLS # | State License # | Seller's Brokerage | MLS # | State License # |
| **1311 S. Route 59** | **Naperville** | **60564** | **205 W Wacker Dr Ste 1750** | **Chicago** | **60606** |
| Address | City | Zip | Address | City | Zip |
| **Kim Dalaskey** | **246235** | **475.166285** | **Daniel Hyman** | **104413** | **471013658** |
| Buyer's Designated Agent | MLS # | State License # | Seller's Designated Agent | MLS # | State License # |
| **Karen Fakroddin for KDalaskey** | | | **(312) 338-3003** | | **(312) 338-3008** |
| Phone | | Fax | Phone | | Fax |
| **ksfakroddin91@gmail.com;kfakroddin@monarqueRE.com** | | | **dhyman@mpirealestate.com** | | |
| E-mail | | | E-mail | | |
| **Michelle Chase    MTC@MichelleChaseLaw.com** | | | **William A. Williams    wwilliams@jenner.com** | | |
| Buyer's Attorney    E-mail | | | Seller's Attorney    E-mail | | |
| **552 S Washington #205 Naperville    IL    60540** | | | **353 N. Clark Street    Chicago    IL    60654** | | |
| Address    City    State    Zip | | | Address    City    State    Zip | | |
| Phone | | Fax | Phone | | Fax |
| Mortgage Company | | Phone | Homeowner's/Condo Association (if any) | | Phone |
| Loan Officer | | Phone/Fax | Management Co./Other Contact | | Phone |
| Loan Officer E-mail | | | Management Co./Other Contact E-mail | | |

**Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented.**
**Seller rejection:** This offer was presented to Seller on _____, 20 ___ at ___:___ a.m./p.m. and rejected on _____
_____, 20 ___ at ___:___ a.m./p.m. ___ ___ *[SELLER INITIALS]*

© *2018 Illinois Real Estate Lawyers Association. All rights reserved.* **Unauthorized duplication or alteration of this form or any portion thereof is prohibited.** *Official form available at* www.irela.org *(website of Illinois Real Estate Lawyers Association). Approved by the following organizations, December 2018: Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Chicago Bar Association · DuPage County Bar Association · Heartland REALTOR® Organization · Grundy County Bar Association · Hometown Association of REALTORS® · Illinois Real Estate Lawyers Association · Illini Valley Association of REALTORS® · Kane County Bar Association · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of REALTORS® · McHenry County Bar Association · North Shore-Barrington Association of REALTORS® · North Suburban Bar Association · Northwest Suburban Bar Association · Oak Park Area Association of REALTORS® · REALTOR® Association of the Fox Valley, Inc. · Three Rivers Association of REALTORS · Will County Bar Association ·*

*Address:* **119 S ELLSWORTH St, Naperville, IL 60540**     *v7.0*
*Page 13 of 13*

# RIDER TO MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

This Rider to Multi-Board Residential Real Estate Contract 7.0 (this "**Rider**") is dated as of January 12, 2023 (the "**Effective Date**"), and is attached to and made a part of that certain Multi-Board Residential Real Estate Contract (the "**Contract**") by and between Mark Dixon and Ruth Anne Rehfeldt (the "**Purchasers**"), on the one hand, and Gina B. Krol, not individually but solely as chapter 7 trustee of the bankruptcy estate of Carol J. Delgado, (the "**Seller**," and together with the Purchasers, the "**Parties**") on the other hand.

1. Purchasers acknowledges that Seller is the chapter 7 Trustee for the Debtor's bankruptcy estate and, subject to court approval as set forth below, is authorized to execute and deliver the Contract and this Rider and to sell the property located at 119 S. Ellsworth Street, Naperville, Illinois 60540 (the "**Property**") to Purchasers upon the terms and conditions contained in the Contract and this Rider. Purchasers further acknowledge the following regarding Seller's title to the Property:

    1.1  On January 27, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. (Case No. 20-11045-PGH (Bankr. S.D. Fla.), Dkt. 1).

    1.2  On March 9, 2020, the Debtor's case was transferred to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court") (Case No. 20-08603), (Case No. 20-11045-PGH (Bankr. S.D. Fla.), Dkt. 34).

    1.3  On June 11, 2020, the Court entered an order converting the Debtor's case to a case under chapter 7 and authorizing the United States Trustee to appoint a chapter 7 trustee (Dkt. 50).

    1.4  The United States Trustee thereafter appointed Gina B. Krol as the duly qualified and permanent chapter 7 trustee of the Debtor's Estate (Dkt. 51).

    1.5  Record title to the Property is held by Chicago Title Land Trust Company, as trustee of Land Trust No. 8002368555 (the "**Ellsworth Land Trust**").

    1.6  Until December 1, 2022, Ellsworth Investment Group LLC ("**EIG**"), an Illinois limited liability company, was the sole beneficiary of the Ellsworth Land Trust.

    1.7  On December 1, 2022, the Court entered a default judgment in favor of the Trustee and against *inter alia* EIG in Adv. No. 22-00153 (Bankr. N.D. Ill.) conveying 100% of the beneficial interests in the Ellsworth Land Trust to the Trustee, together with any and all right, title, and interest arising therefrom, including with respect to the Property, under Federal Rule of Civil Procedure 70 and Federal Rule of Bankruptcy Procedure 7070 (Adv. No. 22-00153, Dkt. 29) (the "**Default Judgment**").

1.8     On December 15, 2022, the 14-day period under Federal Rule of Bankruptcy Procedure 8002(a)(1) for EIG to appeal the Default Judgment expired. EIG did not file a notice of appeal of the Default Judgment, and the Default Judgment is now a final judgment against EIG.

2.     The transaction contemplated by the Contract and this Rider (the "**Transaction**") is subject to the entry of a Final Order by the Bankruptcy Court. For the purposes of this Rider, a "**Final Order**" is an order that is final for purposes of 28 U.S.C. § 158 or 1291, is no longer subject to appeal or *certiorari* proceedings and no such proceedings are pending.

3.     To effect covenants in the Contract, the Seller shall seek by motion (the "**Sale Motion**") and after notice and a hearing (the "**Sale Hearing**") the entry by the Bankruptcy Court of a Final Order authorizing the Trustee to sell the Property and approving the Contract (the "**Sale Order**"). The Seller shall serve and notice the Sale Motion in accordance with § 363 of the Bankruptcy Code, Rules 2002, 6004, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and other applicable law, including, but not limited to, any applicable Local Rules of the Bankruptcy Court and any applicable Orders of the Bankruptcy Court. The Sale Order shall provide that: (i) the sale of the Property to the Purchasers shall be under the terms and conditions of the Contract and free and clear of all liens, claims, encumbrances or other interests, except for the Permitted Exceptions (as defined below), with any such interests to attach to the proceeds of the sale, pursuant to § 363(f) of the Bankruptcy Code; and (ii) each Purchaser is a purchaser in good faith within the meaning of § 363(m) of the Bankruptcy Code and is entitled to the protections afforded by § 363(m) of the Bankruptcy Code.

4.     The closing of the Transaction (the "**Closing**") shall occur as promptly as is reasonably practicable, but in no event later than thirty (30) calendar days after the Sale Order becomes a Final Order. If the Bankruptcy Court does not order that the Sale Order is immediately enforceable and the automatic stay of the Sale Order under Bankruptcy Rule 6004(h) applies, or if a stay of the Sale Order is otherwise imposed, the Closing shall take place no more than sixteen (16) calendar days following the termination of any such stay of the Sale Order. The Closing shall take place at the offices of Jenner & Block, LLP, 353 N. Clark St., Chicago, Illinois, or at such other place and/or date as mutually agreed to by Purchasers and Seller (the "**Closing Date**"), provided that the Contract has not been otherwise terminated.

5.     Notwithstanding anything to the contrary in the Contract, each Purchaser acknowledges and agrees that the only representations and warranties of the Seller with respect to the Property and the Transaction are the following representations and warranties, which are made by the Seller as of the date hereof and will be deemed remade as of the Closing:

5.1     Subject to and upon the authorization and approval by the Bankruptcy Court pursuant to a Final Order, as described in Section 2 above, Seller has the right to convey, or cause to be conveyed, to Purchasers, the Property.

5.2     To Seller's knowledge, except for the approval of the Bankruptcy Court pursuant to a Final Order, as described in <u>Section 2</u> above, no authorization, consent, approval or order of any governmental or public authority or agency is required for the execution of the Contract by Seller or the consummation by Seller of the Transaction.

6.     As of the date hereof and as of the Closing, each Purchaser represents and warrants to Seller as follows:

6.1     The Contract constitutes the legal, valid, and binding obligations of Purchasers, enforceable against Purchasers in accordance with its terms.

6.2     Neither Purchaser is a country, territory, individual or entity named on a Government List (as defined below), and the monies used in connection with this Contract and amounts committed with respect thereto, were not and are not derived from any activities that contravene any applicable anti-money laundering or anti-bribery laws and regulations (including funds being derived from any person, entity, country or territory on a Government List (as defined below) or engaged in any unlawful activity defined under § 1956(c)(7) of title 18 of the United States Code). For purposes of this paragraph "**Government List**" means any of (a) the two lists maintained by the United States Department of Commerce (Denied Persons and Entities), (b) the list maintained by the United States Department of Treasury (Specially Designated Nationals and Blocked Persons), and (c) the two lists maintained by the United States Department of State (Terrorist Organizations and Debarred Parties). Purchaser is not a person or an entity described by Section 1 of the Executive Order (No. 13,224) Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, 66 Fed. Reg. 49,079 (September 24, 2001) and does not engage in any dealings or transactions and is not otherwise associated with any such persons or entities.

6.3     Neither Purchaser has any personal or professional affiliation or relationship with the Debtor or any person or entity affiliated with, or that would be considered an insider of, the Debtor.

7.     Each Purchaser acknowledges and agrees that the Property is being sold to Purchasers in its "as-is, where is" condition in accordance with Paragraph 36 of the Contract.

8.     All personal property and fixtures located at the Property as of Closing will be abandoned to the Purchasers effective as of Closing with no obligation by Seller to remove any such property.

9.     The Seller shall allow the Purchasers to conduct a soil test at the property, at the Purchasers' expense, and the Contract shall be contingent upon a soil test result evidencing that the Property can structurally support the improvement contemplated by the Purchasers. The Purchasers agree to hold harmless and indemnify the Seller from any liability for the actions of the Purchasers' agents and representatives while conducting the soil test. The contingency shall run through January 20, 2023, or as extended by agreement of the parties.

10. The Contract shall be governed by and construed in accordance with the internal laws of the State of Illinois, without giving effect to choice of law principles of the State of Illinois. Any disputes relating to or arising out of this Contract shall be adjudicated by the Court.

11. In the event of any conflict or inconsistency between the provisions of this Rider and other provisions of the Contract, the provisions of this Rider shall control.

12. This Rider may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Rider as of the date first written above:

| SELLER: | PURCHASERS: |
|---|---|
| _____ | _____ 1/13/2023 |
| GINA B. KROL, NOT INDIVIDUALLY BUT SOLELY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF CAROL J. DELGADO | **Mark Dixon** |
| : | _____ 1/13/2023 |
| | **Ruth Anne Rehfeldt** |

4